# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **BRYANT HARRIS,** ) | |
| ) | |
| Plaintiff, ) | |
| **vs.** ) | Civil Action Number |
| ) | **5:11-cv-3073-AKK** |
| **KRB ELECTRONICS** ) | |
| **INCORPORATED, et al.,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Faced with a significant decrease in revenues, Defendants decided to eliminate Plaintiff Bryant Harris's position.[1] Eliminating a position for economic reasons is normally a legitimate and reasonable business decision that courts do not second guess. However, here, prior to eliminating Harris's position, Defendants created a new position that resembled his position. When Harris saw the advertisement, he was naturally concerned and inquired about whether he should apply. Interestingly, Defendants refused to allow Harris to apply for the "new" position despite admitting that Harris was qualified. Moreover, when

---

[1] Harris filed for bankruptcy protection under Chapter 7 and Tazewell Shepard, III was appointed trustee of the bankruptcy estate. Doc. 10. Although the court granted Harris's motion to substitute Shepard as the plaintiff in this case, *see* docs. 10 and 11, the court will use Harris as the "plaintiff" for purposes of this opinion.

Defendants laid off Harris a few days later, Harris offered to take a pay cut and to work in the new position.  Defendants rejected Harris's offer and, instead, hired someone 39 years younger than Harris a few days later for the "new" position, and purportedly classified the new hire and held him out to customers as a Graphics Manager – the same position Harris held.  The decision led Harris to file this lawsuit in which he alleges discrimination under the Age Discrimination in Employment Act ("ADEA").  Defendants have moved for summary judgment, and the motion is fully briefed.  Docs. 21, 25, 27.  For the reasons set forth below, the court finds that genuine issues of material facts preclude the court from granting the motion.[2]

## I.  SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish

---

[2]The court dismissed Adept Technologies upon notice that Adept filed a Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Alabama.  *See* docs. 31 and 32. As a result, the only remaining defendant is KRB, LLC.

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Id*. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (*per curiam*) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560,1563 (11th Cir. 1989)).

## II.  FACTUAL BACKGROUND

Adept manufacturers parts for use in missiles, helicopters, tanks, and other military hardware. Doc. 22-1 at 5. Brad Fielder and Chad Fielder, Adept's owners, hold the titles of President and Vice President, respectively. Docs. 22-1 at 4; 22-3 at 3. In 2007, Adept acquired KRB, which made silk-screens and label

and graphic prints, including logos, for commercial and military industries.  Doc. 22-1 at 4-6.  KRB and Adept had separate locations when KRB hired Harris in February 2008.  *Id*. at 8.  However, Defendants contend that KRB is practically dissolved and that the two entities now operate from one location.  Docs. 21 at 2; 22-1 at 4, 20.

A. **Bryant Harris's history with KRB and Adept Technologies**

In 2007, Harris worked for Clark and Associates, a company that KRB sub-contracted for the graphics artwork side of its silk-screening process.  Doc. 22-1 at 8-9.  KRB used a two step process for silk-screening.  Doc. 22-4 at 5.  Step one consisted of the graphics generation and involved creating the "artwork" on a computer which KRB then screened onto the product.  *Id*.  The second step included the actual silk-screening and entailed printing the computer artwork to a film and applying it onto the product.  *Id*.  Shortly after Adept acquired KRB, Adept developed a new process for silk-screening using a special kind of film that Clark and Associates did not use, and which eliminated KRB's reliance on Clark and Associates and Harris.  Doc. 22-1 at 8-9.  Initially, Marty Williams, Adept's applied sciences director and the developer of the new process, managed KRB's silk-screening process.  Doc. 22-1 at 9-10.  However, KRB hired Harris as its Graphics Manager in February 2008, and Harris's job included managing the

graphics part of the business (step one of the process), serving as a customer liaison, and generating additional silk-screening business. *Id.*; doc. 22-5 at 27. Brad and Chad Fielder believed that Harris would work well with existing customers and bring in new customers to grow the business since Harris had worked for many years with KRB's customers. Doc. 22-1 at 9. KRB contends that Harris's ability to generate new business factored into its decision to meet Harris's salary demand of $60,000. Docs. 22-3 at 6; 22-5 at 30. However, Harris asserts, and Brad Fielder confirms, that KRB did not consider the ability to generate new business as a "critical" function of Harris's job. *Id.*; doc. 26 at 3. In the end, Harris was unable to generate any substantial new business and was laid off in July 2009. Doc. 22-3 at 6; doc. 1.

**B.     The decline in KRB's business and KRB's reorganization**

The economic downturn affected KRB's business in 2009 and resulted in a decline in sales from $352,388.25 in 2008 to $158, 577.31 in 2009. Doc. 22-2 at 18. The monthly sales breakdown was as follows:

| **Monthly Sales Breakdown:** | **2008 ($352,388.25)** v. | **2009 ($158,577.31)** |
|---|---|---|
| January | $28,577.96 | $13,005.95 |
| February | $27,181.34 | $12,560.42 |
| March | $62,522.05 | $30,095.65 |
| April | $29,090.80 | $16,745.45 |
| May | $26,413.30 | $11,934.85 |
| June | $30,193.32 | $16,775.45 |

| | | |
|---|---|---|
| July | $23,764.45 | $16,400.25 |
| August | $22,548.55 | $8,051.44 |
| September | $19,964.59 | $11,201.09 |
| October | $38,124.58 | $5,266.16 |
| November | $22,806.59 | $10,369.85 |
| December | $21,200.45 | $6,170.75 |

*Id*. KRB attributes the decline to Harris's failure to generate new business to replace the repeat customer business that decreased in 2009. Doc. 22-1 at 16. In light of the more than 50% decline in sales, Chad and Brad Fielder decided to reorganize, in part, by eliminating Harris's position and that of another silk-screening employee. Doc. 22-1 at 18, 20, 23; doc. 25 at 4. However, while Chad Fielder was disappointed in Harris's failure to generate new business, he did not ascribe the decline in KRB's work to Harris and understood that the economy factored in the decline. Docs. 26 at 4; 22-1 at 16, 18.

On Sunday, June 21, 2009, before KRB informed Harris of the decision to lay him off, KRB ran the following advertisement in The Huntsville Times:

**Graphic Artist**
**Technical Illustrator**
performing artwork generation for silkscreen and digital printing processes. Must be proficient in the use of Illustrator or Corel Draw. Interpretation of blue prints and technical specifications is a plus. Position requires good customer relation skills and offers growth potential. Fill out an application at: 2858 Wall Triana Hwy, Huntsville, AL 35824. Fax resume to: 256-851-2937 or E-Mail office@adept-technologies.com

Doc. 22-2 at 2. Harris showed the ad to Brad Fielder the next day and asked if he should worry about his job. Doc. 22-5 at 51. Allegedly, Brad Fielder said he did not know anything about the ad, and assured Harris that he did not need to worry about his job. *Id*. Harris also showed the ad to Marty Williams who told Harris that the ad did not pertain to Harris and that Harris had no reason to worry. *Id*. at 51-52. Despite the assurances, Harris still asked Williams if he should apply for the position and was told no. *Id*. at 52.

On July 1, 2009, despite the previous assurances, Chad Fielder and Marty Williams informed Harris of the decision to lay him off because of the revenue decline. Docs. 22-1 at 18, 20; 22-4 at 8; 22-5 at 55-56. When Harris asked if he could stay on at half of his salary in lieu of the lay off, Chad Fielder declined the offer. Doc. 22-5 at 56. According to Chad Fielder, Harris's performance played no role in the decision to lay him off. *Id*. KRB provided conflicting reasons regarding its decision not to offer Harris the new position or allow him to stay at a reduced salary. Specifically, Williams testified that he did not think Harris was a good fit for the advertised position because of Harris's technical errors. Doc. 22-4 at 8-9. However, Chad and Brad Fielder testified that Harris was qualified for the advertised position, but that Harris was not a good fit because Harris refused to help with the second part of the silk-screening process and was not capable of

doing it.[3]  Docs. 22-1 at 23-25; 22-3 at 10-11.  Chad Fielder also testified that he rejected Harris's offer to stay on at half of his salary because he did not want to "insult" Harris with the lower paying position.  Doc. 22-1 at 40.

**C.    KRB hires 22 year old for advertised position after Harris laid off**

On July 9, 2009, KRB hired Jonathan Mann, age 22, for the new position. Docs. 22-1 at 21; 22-2 at 5, 17.  The parties disagree on whether Mann replaced Harris.  Doc. 26 at 11.  KRB asserts that the two positions had different responsibilities and pay grades, that Mann's job was an hourly rate position with a lower skill set, and that KRB designed the new job to bring someone in at a lower pay scale and to train him to perform the entire silk-screening process.  Doc. 22-1 at 22-23.  KRB paid Mann $16 per hour, just slightly more than half of Harris's salary.  Docs. 22-2 at 8; 22-5 at 30.  Moreover, KRB contends that, unlike Harris's position, the new position had no expectation or requirement to grow sales nor any managerial responsibilities.  Doc. 22-1 at 22-23.  To no surprise, Harris disagrees and asserts that contrary to the "Graphic Artist/Technical Illustrator" advertisement, doc. 22-2 at 2, Mann's Employee Information sheet identified Mann as a "Graphics Mgr," *id*. at 8.  Moreover, Harris asserts that when KRB

---

[3]Harris testified that he never refused to help and that he often helped with the entire process.  Doc. 25 at 4.

introduced Mann to "customers and vendors" via an email, the subject stated "KRB Electronics Contact Information and New *Graphics Manager*," and the email stated that "KRB Electronics is pleased to announce our new *Graphics Manager*, Jonathan Mann. With an extensive background ranging from fine art to technical illustration and industrial design, Jonathan provides value added services and expertise for your silk screening, labeling, and wide format printing projects." Doc. 22-2 at 40 (emphasis added).

### III.  ANALYSIS

The ADEA makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.... That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000) (citation omitted).  Courts have often recognized that this inquiry "is both sensitive and difficult and that there will seldom be eyewitness testimony as to the employer's mental processes." *Id*.

(internal quotations omitted).  Consequently, courts have applied some variation on the framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, and its progeny to analyze ADEA circumstantial evidence cases.  *Id.* (citations omitted); *see also Walker v. NationsBank of Fla., N.A.,* 53 F.3d 1548, 1556 (11th Cir. 1995).

Under the *McDonnell Douglas Corp.* framework, a plaintiff must first create an inference of discrimination by establishing a prima facie case.  *Walker,* 53 F.3d at 1556 (citation omitted).  If established, the prima facie case raises a presumption that the employer is liable to the employee under the ADEA.  *Id*. (citing *Texas Dept. of Community of Affairs v. Burdine,* 450 U.S. 248, 254 (1981)). "[T]he burden then shifts to the defendant to produce some 'legitimate, nondiscriminatory reason' for the adverse employment decision." *Id*. (quoting *Burdine,* 450 U.S. at 254). Because the defendant need only produce, not prove, a nondiscriminatory reason, this burden is "exceedingly light." *Id.* (quoting *Perryman v. Johnson Products Co., Inc.,* 698 F.2d 1138, 1142 (11th Cir. 1983)). Once the defendant carries the burden of production, the plaintiff must prove through presentation of a preponderance of the evidence that the reason provided by the defendant is a pretext for unlawful discrimination.  *Burdine,* 450 U.S. at 253.  "To show pretext, a plaintiff may demonstrate such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the proffered reasons for the employment action such that a reasonable factfinder could find them unworthy of credence." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (internal quotations omitted). "However, the plaintiff cannot merely quarrel with the wisdom of the employer's reason, but must meet the reason head on and rebut it." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (internal quotations omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citation omitted).

To establish a prima facie case of age discrimination, a plaintiff must produce evidence that (1) he is a member of a protected group; (2) he was qualified for the position held; (3) he was subjected to an adverse employment action; and (4) a substantially younger person filled the position that he sought or from which he was discharged. *See Damon v. Fleming Supermarkets of Fla.,* 196 F.3d 1354, 1359 (11th Cir. 1999). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997). Indeed, even if a plaintiff was not replaced by someone younger, he can

still establish a prima facie case under the "job-reduction" model by showing: (1) that he was in a protected group and was adversely affected by an employment decision; (2) that he was qualified to assume another position at the time of discharge or demotion; and (3) evidence by which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

Harris asserts that he can establish a prima facie case under both the "replacement" and "job-reduction" models. Doc. 26 at 11. KRB appears to concede that Harris can establish elements one through three of the "replacement" prima facie case: Harris was 61 (step one), doc. 1 at 4, was qualified for the new position according to Chad and Brad Fielder (step two), docs. 22-1 at 23; 22-3 at 10, and suffered an adverse employment action (step three). However, KRB challenges the fourth element because it asserts that it eliminated Harris's position instead of "replac[ing] [him] by a younger person." Doc. 21 at 10-11. Moreover, KRB asserts also that Harris's position included managerial and business generating responsibilities, neither of which the new position required. Doc. 22-1 at 22-23. Harris disagrees and contends that KRB hired Jonathan Mann, who was nearly forty years younger, immediately after into the remarkably similar new position. Doc. 26 at 11. Harris further asserts that regardless of Mann's lesser

pay, KRB held Mann out as its "Graphics Manager," i.e. the position Harris held. *Id*. Thus, Harris contends that he has sufficient evidence to establish a prima facie case under the "replacement" model. *Id*.

The court does not have to resolve this issue because Harris has clearly established a prima facie case under the "job-reduction" model. Again, the first element of the "job-reduction" prima facie case is not in question since Harris was in a protected group and was adversely affected by the lay off. As to the second element, KRB admitted that Harris was qualified for the advertised position. *See Barnes*, 814 F.2d at 609; docs. 22-1 at 23; 22-3 at 10. However, as to the third element, KRB contends that it laid Harris off because business plummeted in 2009 and that Harris can present no evidence that it intended to discriminate against him. *See* doc. 21 at 12; *Barnes*, 814 F.2d at 609. The court disagrees. As Harris reiterated, the Eleventh Circuit is clear that "demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Doc. 26 at 12 (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Moreover, Harris cites *Jameson v. Arrow Co.*, 75 F.3d 1528 (11th Cir. 1996), in which the court held that "when a discharged employee applies for a job for which she is qualified and which is available at the time of her termination....An employer's decision to transfer or to hire a younger

employee for that available position is sufficient to support an inference of discrimination for the limited purpose of establishing the plaintiff's prima facie case..." 75 F.3d at 1533. Therefore, because Harris was qualified for the advertised position (a fact KRB acknowledged), informed KRB that he wanted to apply for it, and also offered to work for half of his pay, Harris has established a "job reduction" model prima facie case of age discrimination under *Jameson*. *See* 75 F.3d at 1533.

 The burden now shifts to KRB, and KRB has established that its reduced revenues and the declining economy in 2009 were legitimate, non-discriminatory reasons for laying Harris off. Doc. 26 at 4. Consequently, the burden shifts back to Harris to establish that KRB's reasons are pretextual. In that regard, Harris contends the financial reason is pretextual because of purported "implausiblities, inconsistencies, incoherencies [and] contradictions" in KRB's argument. *See Cooper*, 390 F.3d at 725. Specifically, Harris contends that (1) KRB immediately replaced him with a "scaled down" position, (2) KRB hid the advertised position from him and when he found out and inquired about it, KRB told him his position was not in jeopardy, (3) when he asked KRB to consider him for the advertised position, despite acknowledging he was qualified, KRB did not even allow him to apply even after he offered to take a 50% pay cut, and (4) the advertised position

was only for the graphics artwork side of the business, as outlined in the advertisement, rather than for the entire silk-screening process as KRB contends. Doc. 26 at 17. While the court finds that KRB's financial reasons for eliminating Harris's position were legitimate and reasonable in light of the revenue issues in 2009, the court finds critical that KRB told Harris not to apply for the new advertised position despite the undisputed fact that Harris was qualified and also assured Harris his job was not in jeopardy. Whether this evidence of "implausiblities, inconsistencies, incoherencies [and] contradictions" is tantamount to age discrimination is for a jury to decide. Because Harris has established that KRB's financial reasons for terminating him were pretexual in light of his willingness to apply for the new position and to take the corresponding pay cut, KRB's motion for summary judgment is **DENIED**.

## IV.  CONCLUSION

Based on the foregoing reasons, Harris has established a *prima facie* case of age discrimination and showed that KRB's articulated reasons are pretextual. Therefore, KRB's motion for summary judgment is **DENIED**.

**DONE** the 29th day of November, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE